UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RICHARD A. SYLVESTER and
DAVID BESS

     Plaintiffs

v.                                    Civil Action No.: 2:05-0274
                                      (Lead Case)

PROVIDENCE HEALTHCARE RISK
MANAGERS, LLC and
BMS CONSULTING, INC. and
BENEFIT MARKETING

     Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending are (1) motions to dismiss filed by defendant
BMS Consulting, Inc. ("BMS") and Benefit Marketing, respectively
on June 13 and July 1, 2005, (2) a joinder in the BMS motion by
Providence Healthcare Risk Managers, LLC, ("Providence"), filed
June 20, 2005, and (3) a motion filed July 1, 2005, by Benefit
Marketing to join the West Virginia South District Church of the
Nazarene ("South District") as a defendant pursuant to Rule 19,
Federal Rules of Civil Procedure.


I.


      Plaintiffs Richard A. Sylvester and David Bess are West
Virginia citizens.  (Not. of Remov. ¶¶ 4-5.)  The defendants are

Virginia citizens.  (Id. ¶¶ 6-8.)  Plaintiffs do not challenge defendants' assertion that the complaint seeks damages in an amount exceeding the jurisdictional minimum.  Defendants also contend federal question jurisdiction is warranted on complete preemption grounds.

In 2003, defendant Benefit Marketing, through its employee, John L. Pate, solicited business from plaintiffs through their employer, the Community Church of Teays Valley. (Compl. ¶ 6.)  Specifically, Pate attempted to sell, inter alia, health and life insurance products to plaintiffs offered by the Church of the Nazarene Employee Health Benefit Plan ("plan"). (Id.)  According to plaintiffs, the plan was "owned, operated and/or controlled by" defendant Providence. (Id.)  Plan benefits were administered by defendant BMS.  (Id.)

The Church of the Nazarene ("church") was heavily involved in creating and administering the plan.  A few plan excerpts illustrate the point:

> PURPOSE OF THE PLAN
> Church . . . Executes [sic] this document, including any amendments, to establish a health benefit plan for the exclusive benefit of its participating Employees, and their Dependents, and to grant such Participants and Dependents legally enforceable rights under this Plan.  While Church . . . has every intention of continuing this Plan indefinitely, it reserves the right to amend or terminate the Plan, and the benefits

2

provided hereunder, at any time.

. . . .

AMENDMENT AND TERMINATION
Church . . . may amend or terminate the Plan at any
time by means of a writing signed by a person
authorized to do so on behalf of Church . . . .

Upon Plan termination, any Plan assets remaining in the
Plan's account(s) will be distributed by the Plan
Administrator to the Plan sponsor and/or Participants,
in accordance with method(s) set forth in ERISA, or any
other applicable Plan benefits and expenses before any
distribution is made.

. . . .

Church of the Nazarene reserves the right, at any time
and from time to time, to modify or amend, in whole or
in part, any or all of the provisions of the Plan.

(Plan at 5.)

Pate knew plaintiffs were not affiliated with the
church as congregants, ministerial staff, or in any other similar
capacity.  (Id.)  At no time, however, did Pate suggest
plaintiffs were unqualified applicants by virtue of their lack of
affiliation with the church.  (Id. ¶ 7.)   Indeed, Pate
represented just the opposite was true.  (Id.)

Later in 2003, Providence, Benefit Marketing, and/or
BMS approved plaintiffs' applications. (Id. ¶ 8.)  Plaintiffs
began receiving coverage under the plan effective January 1,
2003.  (Id.)  Plaintiffs paid all premiums, had their claims

3

paid, and were in good standing as members of the plan for a
period of time.  (Id.)  In fall 2003, however, plaintiffs were
notified by one or more of the defendants that their plan
coverage was being terminated retroactively.  (Id. ¶ 9.)
Coverage was apparently terminated after it was discovered
plaintiffs were not affiliated with the church.  At that time,
plaintiffs had claims pending which ultimately were not paid.
(Id. ¶ 10.)  These submitted but unpaid claims have resulted in
plaintiffs receiving collection notices and being named in
collections actions.  (Id. ¶ 11.)

        On January 31, 2005, plaintiffs instituted this action
in the Circuit Court of Putnam County.  They allege claims
against the defendants for (1) violation of the West Virginia
Unfair Trade Practices Act, West Virginia Code section 33-11-4,
(2) breach of contract, (3) breach of fiduciary duty, and (4)
fraud.  On April 1, 2005, the case was removed on diversity and
federal question grounds.  Federal question jurisdiction is
premised upon complete preemption of some or all of plaintiffs'
claims under ERISA.

        Defendants have moved to dismiss.  BMS' motion contends
(1) plaintiffs' state-law claims are preempted by ERISA and
should be re-characterized consistent with that statute's

                              4

comprehensive civil enforcement scheme, <u>see</u> 29 U.S.C. § 1132, (2) the ERISA claims, as re-characterized, do not state a claim against BMS, (3) any remaining demand for either damages or a jury trial must be stricken, and (4) any remaining state law claims against BMS must be dismissed for lack of personal jurisdiction.  Both Benefit Marketing and Providence formally adopt BMS' motion.

II.

A.   Motions to Dismiss

1.  Governing Standard

A motion to dismiss for failure to state a claim should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff.  <u>Mylan Laboratories, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1197 (1994) (citations omitted); <u>see also</u> <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 181 (4th Cir. 1996).

5

2.  Analysis

Plaintiffs' complaint rests largely on the proposition
that ERISA does not apply.  In contrast, nearly all of the
defenses asserted by the opposing parties rest upon the notion
that ERISA controls this action.  If ERISA does not apply,
plaintiff is left with potentially viable state law claims,
although BMS and Benefit Marketing, at the least, might depart
from the case based upon the absence of personal jurisdiction.

If ERISA does apply, plaintiffs' claims will be re-
characterized pursuant to that federal statute, resulting in the
almost certain dismissal of many claims and perhaps certain
parties.  Interestingly though, the personal jurisdiction
argument may very well falter in that instance based upon ERISA's
nationwide service of process provision.  29 U.S.C. § 1132(e)(2)
("Where an action under this subchapter is brought in a district
court . . . it may be brought in the district . . . where the
breach took place . . . and process may be served in any other
district where a defendant resides or may be found.").  ERISA's
applicability is thus a central issue in this matter.

Plaintiffs contend the plan at issue is a church plan exempt from ERISA coverage.  Our court of appeals discussed such a plan in <u>Lown v. Continental Cas. Co.</u>, 238 F.3d 543, 547 (4th Cir. 2001):

> Church plans are not ERISA plans, however. 29 U.S.C. § 1003(b)(2). A church plan means a plan established and maintained "for its employees (or their beneficiaries) by a church or by a convention or association of churches." <u>Id.</u> § 1002(33)(A). A church plan does not include all plans maintained by a church. The statute specifically excludes plans established and maintained primarily for the benefit of those "who are employed in connection with one or more unrelated trades or businesses." <u>Id.</u> § 1002(33)(B)(I).

<u>Id.</u>  Title 29 U.S.C. § 1002(33)(A) defines a church plan in deceptively simple terms as follows:

> (33)(A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

<u>Id.</u>  The multiple, and multi-part, subsections that follow this definition, however, illustrate the complex, fact-intensive nature of the inquiry.  <u>See</u> 29 U.S.C. § 1002(33)(B)-(D).

BMS contends in reply that (1) plaintiffs did not plead the fact that the plan is actually a church plan, and (2) the church elected to waive its right to the statutory exemption, noting Article XIII of the plan is entitled "**STATEMENT OF ERISA**

7

RIGHTS[.]"  (Plan at 67.)  BMS cites but a single district court

case for the latter proposition.  See Catholic Charities of

Maine, Inc. v. City of Portland, 304 F. Supp.2d 77 (D. Me. 2004).

Unlike the facts in Portland, however, it is unclear whether the

church here elected to forego the exemption by virtue of making a

special election under 26 U.S.C. § 410(d).[1]  BMS does not mention

that section in its briefing.

     Inasmuch as there are both important factual and legal

issues that remain unresolved, dismissal at this early stage of

the case is inappropriate.  The court, accordingly, ORDERS that

_____

     [1]Title 29 U.S.C. § 1003(b)(2) provides "The provisions of
this subchapter shall not apply to any employee benefit plan if .
. . such plan is a church plan (as defined in section 1002(33) of
this title) with respect to which no election has been made under
section 410(d) of Title 26 . . . ."  Id.  Section 410(d) provides
as follows:

     1) In general.--If the church or convention or
     association of churches which maintains any church plan
     makes an election under this subsection (in such form
     and manner as the Secretary may by regulations
     prescribe), then the provisions of this title relating
     to participation, vesting, funding, etc. (as in effect
     from time to time) shall apply to such church plan as
     if such provisions did not contain an exclusion for
     church plans.

     (2) Election irrevocable.--An election under this
     subsection with respect to any church plan shall be
     binding with respect to such plan, and, once made,
     shall be irrevocable.

29 U.S.C. § 410(d).

the motions to dismiss be, and they hereby are, denied without prejudice to their re-filing at the conclusion of discovery in accordance with Rule 56.  At a minimum, the parties should develop the church plan issue during the discovery period.


B.   Motion for Joinder


Benefit Marketing moves to join the South District to this action.  It is unclear what relationship, if any, the South District has to the church.

The standard governing Benefit Marketing's motion for joinder is found in Rule 19(a), Federal Rules of Civil Procedure

> (a) Persons to be Joined if Feasible. A person who
> is subject to service of process and whose joinder will
> not deprive the court of jurisdiction over the subject
> matter of the action <u>shall be joined</u> as a party in the
> action if (1) <u>in the person's absence complete relief
> cannot be accorded among those already parties</u>, or (2)
> the person claims an interest relating to the subject
> of the action and is so situated that the disposition
> of the action in the person's absence may (I) as a
> practical matter impair or impede the person's ability
> to protect that interest or (ii) leave any of the
> persons already parties subject to a substantial risk
> of incurring double, multiple, or otherwise
> inconsistent obligations by reason of the claimed
> interest. If the person has not been so joined, the
> court shall order that the person be made a party. If
> the person should join as a plaintiff but refuses to do
> so, the person may be made a defendant, or, in a proper
> case, an involuntary plaintiff. If the joined party
> objects to venue and joinder of that party would render

9

the venue of the action improper, that party shall be
dismissed from the action.

Fed. R. Civ. Proc. 19(a) (emphasis added).

Benefit Marketing attaches to its motion a "Memorandum
of Agreement" between Providence and the South District.  Among
other provisions, the Memorandum of Agreement names the South
District as the plan sponsor.  Further, the Memorandum Agreement
requires the South District to maintain details of all employees
and dependents covered under the plan.  The Memorandum of
Agreement also provides as follows:

> The Plan Sponsor agrees to assume responsibility for
> all reasonable and necessary legal fees and costs
> arising out of any claim against the Plan, together
> with the amount of any judgement in respect of a claim.
> The Plan Sponsor also indemnifies . . .  [Providence]
> against such fees and costs except to the extent that
> they arise from the negligence or wilful misconduct of
> the Plan Risk Manager, its agents or employees.
>
> The Plan Sponsor indemnifies . . . [Providence] and
> holds . . . [it] harmless for any liability, costs,
> expenses, legal fees, judgements, or any other damages
> whatsoever which . . . [Providence] may incur as a
> result of the acts, errors or omissions of the Plan
> Sponsor, its officers, employees or agents.

(Memo. of Agmt. ¶¶ 6.1.1-6.1.2, 21.5-21.6.)  Benefit Marketing
further asserts the South District "bore the ultimate[]
responsib[ility] for administering, interpreting, authorizing
payments of benefits, and determining eligibility under the
Plan[.]"  (Memo. in supp. at 9.)

10

There is presently no suggestion that joinder of the South District is prevented by any obstacles relating to either service of process or subject matter jurisdiction.  Further, the foregoing discussion indicates the South District played a central role in administering the plan, along with taking on substantial indemnification responsibilities.  Based upon these considerations, the court finds that in the South District's absence, complete relief cannot be accorded amongst those already joined.

The court, accordingly, ORDERS that Benefit Marketing's motion to join the South District be, and it hereby is, granted.

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1.  That the motions to dismiss be, and they hereby are, denied without prejudice to their re-filing at the conclusion of discovery;

2.  That Benefit Marketing's motion to join the South District be, and it hereby is, granted; and

11

3.    That Benefit Marketing file its third-party complaint

        naming the South District no later than November 9,

        2005.

    The Clerk is directed to forward copies of this written

opinion and order to all counsel of record.

                            DATED: October 27, 2005

                            _____

                            John T. Copenhaver, Jr.
                            United States District Judge